1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12
13
14

MARGARET R. SNOOK,                    )
                                      )    No. CV-07-0110-CI
          Plaintiff,                  )
                                      )    ORDER GRANTING IN PART
v.                                    )    PLAINTIFF'S MOTION FOR
                                      )    SUMMARY JUDGMENT AND
MICHAEL J. ASTRUE,                    )    REMANDING TO COMMISSIONER
Commissioner of Social                )    FOR ADDITIONAL PROCEEDINGS
Security,                             )
                                      )
          Defendant.                  )
                                      )
                                      )
                                      )

15    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec.
16    13, 16.)  Oral argument on the Motions was heard telephonically at a
17    hearing on November 27, 2007.  Attorney Rebecca Coufal represents
18    Plaintiff; Special Assistant United States Attorney David Johnson
19    represents Defendant.  The parties have consented to proceed before a
20    magistrate judge.  (Ct. Rec. 7.)  After reviewing the administrative
21    record and briefs filed by the parties, and considering arguments of
22    counsel, the court **GRANTS IN PART** Plaintiff's Motion for Summary
23    Judgment, and remands the matter to the Commissioner for additional
24    proceedings pursuant to 42 U.S.C. § 405(g).

25                              **JURISDICTION**

26    On March 24, 2004, plaintiff Margaret Snook (Plaintiff) filed an
27    application for disability insurance benefits (DIB). (Tr. 14, 51.)
28    Plaintiff alleged disability due to back and neck injury and major

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

depression, with an onset date of April 28, 1995. (Tr. 83, 92-93, 100.) Her last date of insured was December 31, 2000. (Tr. 100.) Benefits were denied initially and on reconsideration. (Tr. 40, 43.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard Say on September 21, 2006. (Tr. 517-41.) Plaintiff appeared at the hearing without legal counsel and testified. She explained she attempted to obtain counsel, but she "wasn't able to get one because of how I explained it." (Tr. 520.) Vocational expert Fred Cutler testified. (Tr. 534.) The ALJ denied benefits and the Appeals Council denied review. (Tr. 6-8.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 55 years old, divorced and living alone. She had a high school education and one year of business school. (Tr. 89, 524-25.) She had past relevant work experience as a clerk, a cook, culinary arts teacher, and residential counselor. (Tr. 535.) She testified she could no longer work due to problems with her low back and neck from a workplace injury, and depression and anxiety. (Tr. 526.) She testified she started treatment for depression in 1996 or 1997. (Tr. 528.) She stated she could do routine household chores with the exception of vacuuming, which hurt her back. She cooked, did laundry for herself, but was able to lift only seven pounds since 2000. (Tr. 528-30.)

### ADMINISTRATIVE DECISION

At step one, ALJ Say found the period of disability insured status ended on December 31, 2000, and Plaintiff had not engaged in

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

substantial gainful activity during the relevant time. (Tr. 16.) At step two, he found Plaintiff had the severe impairment of degenerative joint disease in her right knee, degenerative disc disease and depression, but these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 17.) The ALJ found Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 18.) At step four, he determined Plaintiff had the following residual functional capacity (RFC):

> [T]hrough the date of last insured, the claimant had the residual functional capacity to perform light work. The claimant could lift 20 pounds occasionally and frequently lift or carry 10 pounds. The claimant could sit for two hours and stand or walk for six hours in an eight-hour workday. The claimant would have needed to change position from time to time to relieve her pain symptoms. The claimant had good use of her arms and hands for repetitive grasping, holding, and turning objects. The claimant was also capable of performing sedentary work. The claimant could occasionally stoop, crouch, crawl, kneel, balance and climb ramps or stairs. The claimant could not climb ropes or scaffolds. The clamant had reduced concentration due to pain, but could at least follow short, simple instructions. The claimant was able to remain attentive and responsive in a work setting and was able to carry out work tasks satisfactorily. The claimant's medications did not prevent her from functioning at the levels indicated.

(Tr. 17.)

The ALJ found Plaintiff could not perform her past relevant work through the date of last insured, but based on the record and testimony of the vocational expert, he determined there was a significant number of jobs in the national economy that Plaintiff could perform. He concluded, therefore, that she was not under a "disability," as defined by the Social Security Act, from the alleged date of onset through December 31, 2000, the date of last insured. (Tr. 22-23.)

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) failed to fully develop the record; (2) improperly rejected treating and examining medical source opinions; (3) improperly assessed her credibility and pain testimony; (4)

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1    assessed her capable of "light" work; and (5) failed to provide a

2    complete hypothetical to the vocational expert at step five.  (Ct.

3    Rec. 14 at 7-13.)

4                              **DISCUSSION**

5    **A.   Disability Period at Issue**

6          Because Plaintiff applied for DIB under Title II of the Social

7    Security Act, 42 U.S.C. §§ 401-433, she must show she became disabled

8    on or before the last date of her "insured status" under the program.

9    *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The ALJ found

10   Plaintiff's date of last insured was December 31, 2000.  (Tr. 14, 16;

11   *see also* Tr. 66.)  This finding has not been challenged.  Further,

12   Plaintiff applied for benefits in March 2004, well after her date of

13   last insured.   To be eligible for continuing benefits, she must

14   establish that her disability continued from before her date of last

15   insured until twelve months prior to filing her application.   42

16   U.S.C. § 416(i)(2)(E); *Flaten v. Secretary of Health and Human*

17   *Services*, 44 F.3d 1453, 1458 (9th Cir. 1995).   Therefore, Plaintiff

18   must show her disability continued through March 2003.[1]

19   **B.   Duty to Develop the Record**

20         Generally, an ALJ's duty to supplement the record is triggered by

21   ambiguous evidence or when the record is inadequate to properly

22   evaluate the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th

23   Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

24   _____

25         [1] Although the relevant period of disability is 1995 through

26   December 2000, later reports considered by the ALJ and the Appeals

27   Council are considered by the court.  *Lingenfelter v. Astrue*, 504

28   F.3d 1028, 1034 n.3 (9th Cir. 2007).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

However, this independent duty is heightened when a claimant is unrepresented at the proceedings.  With a pro se claimant, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" and be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)* (*citing Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978).  The claimant must show prejudice or unfairness in the proceedings to be entitled to a remand.  *Hall v. Secretary of Health, Ed. and Welfare*, 602 F.2d 1372 (9th Cir. 1979).  Here, Plaintiff had not been able to find an attorney to represent her, despite her efforts.  She argues the ALJ's failure to obtain mental health records from her treating psychologist, Dr. Ashworth, was error that requires remand. (Ct. Rec. 19 at 6.)

Plaintiff was diagnosed with and treated for depression in 1996 and 1997 by Dennis Twigg, Ph.D.  (Tr. 155-68.)  In July 1997, Dr. Twigg referred her to weekly sessions in Colville, Washington, with Dr. Ashworth after noting she made little improvement with medications and that she was having problems accepting limitations caused by her injuries.  He opined she needed intensive psychotherapy, with medication management to show improvement.  He stated she also was having problems managing her home life and was not able to perform a leadership role at work due to her mood disorder.  (Tr. 158-59.)  His opinions are supported by clinical progress notes.  (Tr. 160-66.)  In July 1999, Dr. Dillon also diagnosed pain related depression and opined that due to her symptoms, it "would be very difficult for her [to] work on a reasonably continuous basis now."  He noted that secondary gain motives "play a minor role here," but found "no reason

to not believe her subjective complaints. (Tr. 178.) The ALJ rejected this opinion because there were insufficient mental health treatment records. (Tr. 20.)

In September 2006, Dr. Ashworth apparently responded to a request for records for the Social Security hearing with a one page "Report from Records." (Tr. 514.) He represented that Plaintiff had been receiving services since 1992. (Id.) No progress notes were included, and it is unclear from the record whether the ALJ re-contacted him for additional records. Because the ALJ and an agency psychologist specifically found the evidence was insufficient to make a determination on Plaintiff's mental health condition (Tr. 20, 21, 473), the ALJ had a heightened duty to inquire further and seek records from Dr. Ashworth. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); Tonapetyan, 242 F.3d at 1150. Because the mental health evidence is insufficient, the mental restrictions in the RFC (Tr. 17) are not supported by substantial evidence. On remand, the ALJ will request additional records from Dr. Ashworth; if no records are forthcoming, the ALJ should explain attempts to develop the record in his decision and the basis for psychological/mental limitations in the new RFC.

Plaintiff also argues correctly that the ALJ erred in not calling a medical expert. (Ct. Rec. 14 at 10.) Where the record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to aid in determining the onset date. *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998); *Social Security Ruling* (*SSR*) 83-20. Here, the medical record before the court is complex, consisting of medical reports, clinical notes, results from objective medical testing and imaging, and treating source and medical specialist

opinions dating from 1996 through 2006.  There is substantial evidence of musculoskeletal and mental health impairments.  To determine the degree of impairment and whether Plaintiff is entitled to benefits for any period of time, a medical expert is required to establish an onset date, if any, for disabling impairments.  A medical expert also should testify as to the severity of the impairment, and whether any disabling impairments met the durational requirement of twelve months. The Plaintiff, as a pro se claimant, clearly is prejudiced without this evidence; therefore, remand is appropriate.

## C.    Treating Source Opinions

After a workplace injury to her back in 1995, Plaintiff was examined by neurosurgeon John Demakas, M.D., pursuant to a referral from her treating physician, Karen Schaaf, M.D. (Tr. 151.)  Dr. Demakas ordered a cervical MRI scan in July 1997 and found evident "compression and irritation of the spinal cord" and disk herniation. (Tr. 153.)  He did not think surgical intervention at the C5-6 level would be "worthwhile," but noted that low back surgery was being considered at the L5-S1 level.[2]  (Tr. 153-54.)  Based on her treatment of Plaintiff since 1996 and Dr. Demakas' reports and objective findings, Dr. Schaaf opined in a letter dated July 24, 1997, that due to her back condition, Plaintiff was unable to perform pushing or pulling activities of any weight over five pounds, "as well as any reaching over-head or any activity involving twisting of the upper

_____

[2] Plaintiff was injured in a motor vehicle accident the month before this assessment, which increased her lower back symptoms, including pain radiating down her left leg into her foot.  (Tr. 295.)

spine." (Tr. 301.) She observed that Plaintiff was experiencing
constant pain in her neck and back that also radiated down her left
leg, and until the pain was resolved, should not lift more than five
pounds, and should rarely bend, stoop, kneel or climb stairs, or walk
on hard surfaced floors. Dr. Schaaf opined that Plaintiff should not
return to any kind of work at that time. (Tr. 301-02.)

    During this same period, Plaintiff was being treated for
continuous pain in her right knee. James Lamberton, D.O., diagnosed
a torn medial meniscus of the right knee that required surgery. He
performed an arthroscopy of the right knee on September 12, 1997.
(Tr. 169-72.) In December 1997, Dr. Lamberton reported to Dr. Schaaf
that Plaintiff was fixed and stable, but noted "fairly extensive
degenerative changes involving the medial compartment of her knee."
He opined that she would have increasing problems with the knee joint.
(Tr. 173.) Dr. Lamberton also suggested neck surgery to relieve pain
she was experiencing when she turned.[3] (Tr. 310.)

    In 1998, Plaintiff transferred her care from Dr. Schaaf to Noel
Stevenson, M.D. (Tr. 309.) In a comprehensive report dated November
16, 1998, Dr. Stevenson summarized Plaintiff's workplace injuries,
motor vehicle accidents (in 1996 and 1997), back and neck problems,

_____

    [3] Plaintiff ultimately had neck surgery in 2003, after
neurosurgeon Kim B. Wright, M.D., diagnosed foraminal stenosis.
(Tr. 268.) By this time, the left neck pain was radiating to her
shoulder and arm. (Tr. 262.) Dr. Wright also found marked
degenerative disc changes in the MRI of her lower back but
recommended neck surgery before considering a lumbar fusion. (Tr.
263.)

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

and attendant symptoms of pain, numbness, headaches and depression. (Tr. 309-10.)  At that time, Plaintiff was being treated with Vicodin, Fioricet, Ultram, Soma, Neurontin, Prozac and other antidepressants. (Tr. 310.)  The record contains clinical notes and treatment records from Dr. Stevenson through 2005.  (Tr. 288-464, 502-511.)

On November 30, 1998, in a letter to the Office of Workers Compensation Programs, Dr. Stevenson opined Plaintiff's condition was "fixed and stable" from her injury, and that "the combination of the psychological effect and the limitations relative to the injury and degenerative change have precluded her from working with freedom from enough pain to survive the work place."  (Tr. 502.)

On reconsideration in October 2004, agency physician Charles Wolfe, M.D., reviewed the records available covering the period between April 1995 and December 2000.  (Tr. 466-72.)  In his RFC assessment, Dr. Wolfe opined Plaintiff suffered neck and back pain but "did not appear to have a time period of less than sedentary for 12 months in a row."  Reconsideration was denied due to "insufficient evidence."  (Tr. 471-72.)

Plaintiff argues that the ALJ's improper rejection of these medical opinions rendered his finding of "light"[4] work capacity unsupported by substantial evidence.  It is well settled that a treating physician's opinion is given special weight because of his familiarity with the claimant and her medical condition.  *See Fair v.*

---

[4] "Light" work involves lifting up to twenty pounds, with "frequent lifting and carrying of objects up to ten pounds"; it requires "a good deal of walking or standing" or sitting with pushing and pulling controls.  20 C.F.R. § 404.1567.

1  *Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).   If the treating

2  physician's opinion is not contradicted, it can be rejected only with

3  "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830

4  (9th Cir. 1995).   If contradicted, the ALJ may reject the opinion if

5  he states specific, legitimate reasons that are supported by

6  substantial evidence. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at

7  605.

8      Historically, the courts have recognized conflicting medical

9  evidence, the absence of regular medical treatment during the alleged

10 period of disability, and the lack of medical support for doctors'

11 reports based substantially on a claimant's subjective complaints of

12 pain, as specific, legitimate reasons for disregarding the treating

13 physician's opinion.  *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d

14 at 604.   Although a claimant's credibility determinations are

15 considered properly in the evaluation of medical evidence, *see Webb,*

16 433 F.3d at 688, and the ALJ can disregard self-serving statements to

17 the extent they are not supported by objective findings, the ALJ

18 cannot "insulate ultimate conclusions regarding disability from review

19 by turning them into a question of 'credibility.'"  *Jones v. Heckler*,

20 760 F.2d 993, 997 (9th Cir. 1985).

21      Here, Plaintiff's treating physicians considered her medical

22 conditions serious enough to preclude working at her job.

23 Nonetheless, the ALJ rejected restrictions from Dr. Schaaf in 1997,

24 because they were inconsistent with daily activities reported by

25 Plaintiff to her chiropractor. (Tr. 21.)  However, the ALJ does not

26 specify which activities reported, and when, were inconsistent with

27 Dr. Schaaf's limitations at the time.  For example the chiropractor

28 records cited by the ALJ (Exhibits 12F, from Greg Harvey,

1  Chiropractor) cover the period from November 1999 to November 2002.
2  (Tr. 3, 203-250.)  Dr. Schaaf's rejected restrictions were contained
3  in a July 1997 letter.

4       The ALJ also discredited Dr. Schaaf's opinions because in July
5  1997, the doctor recanted her approval of a return to work offer four
6  days after approving the job.  (Tr. 21.)  The record indicates
7  Plaintiff was offered a job as Cook Training Leader on June 13, 1997.
8  In a letter to Plaintiff, the employer represented that Dr. Schaaf had
9  approved the position.  (Tr. 78.)  However, there is no supporting
10 documentation from Dr. Schaaf indicating she approved the position's
11 exertional requirements.  Even assuming she approved the position
12 before June 13, a review of Dr. Schaaf's clinical notes indicate that
13 on June 30, 1997, Plaintiff was injured in a motor vehicle accident
14 that aggravated her work related injuries.  (Tr. 295.)  On July 5,
15 1997, Dr. Schaaf noted her plan to call Plaintiff's worker's
16 compensation attorney about the "recent job offer." (Tr. 297.)  In
17 the July 24, 1997, letter referenced *supra,* she reported to
18 Plaintiff's attorney that Dr. Demakas, "recently reported to me that
19 the results of 2 MRI's done in June 1997, on Margaret's neck and back.
20 We now have objective evidence as to why Margaret's pain and
21 disability continue and why she is unable to perform certain job
22 tasks." (Tr. 301.)  Dr. Schaaf's reconsideration of her approval
23 apparently was based reasonably on a worsening of Plaintiff's
24 condition, as well as information from Dr. Demakas received after
25 giving her initial approval.  The ALJ's reasons for rejecting Dr.
26 Schaaf's opinions are neither specific nor legitimate.

27      The ALJ gave Dr. Stevenson's opinions no weight because a
28 comprehensive report referenced by Dr. Stevenson in his opinion letter

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

was not "provided for in the medical record." (Tr. 21.)  This reason is not supported by substantial evidence.   The record includes a "Comprehensive History" by Dr. Stevenson at Tr. 309, dated November 16, 1998, two weeks prior to his opinion letter of November 30, 1998. The report provides Plaintiff's medical history (starting in 1973) and a summary of imaging, treatment, medications, and reports from her treating medical specialists.  (Tr. 309-11.)   Further, the ALJ's finding that without this report, "there is no support for Dr. Stevenson's opinions" (Tr. 19-20) is not supported by the evidence and is insufficient to reject a treating physician's opinions. *Lingenfelter,* 504 F.3d at 1040 n.10.

The record includes Dr. Stevenson's clinical notes and objective testing results that cover almost six years.  (Tr. 309-464, 502-511.) The records are consistent with Plaintiff's subjective complaints and support Dr. Stevenson's 1998 opinion that her condition and pain precluded her from work.  Dr. Stevenson's opinions are supported by substantial evidence. *Lingenfelter*, 504 F.3d at 1037-38; *Lester*, 81 F.3d at 833 (treating physician is especially qualified to evaluate and integrate information "to form an overall conclusion as to functional [patient's] capacities and limitations.")

The ALJ's rejection of Dr. Schaaf's and Dr. Stevenson's opinions regarding Plaintiff's limitations during the relevant period is not based on specific or legitimate reasons and is, thus, reversible error.

**D.   Credibility**

Citing Plaintiff's reports of incidental activities in 1999 and 2000 and "objective medical evidence," as reasons for discounting her allegations, the ALJ found Plaintiff's subjective complaints "not

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

entirely credible." (Tr. 18-19.)  An ALJ must provide specific and
cogent reasons for rejecting a claimant's subjective complaints. In
the absence of affirmative evidence of malingering, the ALJ's reasons
must be "clear and convincing." *Morgan*, 169 F.3d at 599.
Furthermore, "the ALJ must specifically identify the testimony she or
he finds not to be credible and must explain what evidence undermines
the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.
2001) (citation omitted).  The following factors may be considered:
(1) the claimant's reputation for truthfulness; (2) inconsistencies in
the claimant's testimony or between his testimony and his conduct; (3)
claimant's daily living activities; (4) claimant's work record; and
(5) testimony from physicians or third parties concerning the nature,
severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278
F.3d 947, 958 (9th Cir. 2002).  "[O]nce the claimant produces
objective medical evidence of an underlying impairment, an adjudicator
may not reject a claimant's subjective complaints based solely on a
lack of objective medical evidence to fully corroborate the alleged
severity of [disabling symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341,
345 (9th Cir. 1991)(citation omitted).

As discussed above, Plaintiff's subjective complaints are
consistent with her treating physician's reports and the severity of
her impairments.  Further, as Dr. Twigg pointed out in his reports,
Plaintiff was very depressed after her injury and had ongoing
difficulty accepting limitations caused by her injury. (Tr. 155-57.)
This observation is consistent with later reports of re-injury after
overexertion.  *(See e.g.* Tr. 208, 210, 212, 221, 222, 224, 231.)
Further, courts have cautioned that a claimant "should not be
penalized for attempting to maintain some sense of normalcy in her

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

life." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The court notes that the physicians who diagnosed and treated Plaintiff did not question Plaintiff's complaints. Dr. Dillon did not find evidence of malingering, observed Plaintiff to be "sincere" and found no reason to disbelieve her subjective complaints. (Tr. 177-78.) Dr. Stevenson noted Plaintiff was not a constant complainer and she would try to work if possible. (Tr. 327.) Finally, the ALJ did not specify which testimony he found not to be credible, or explain how the cited evidence undermined her allegations of being unable to sustain work. *Holohan*, 246 F.3d at 1208. Viewing the record in its entirety, and considering the improper rejection of treating physicians' opinions, the ALJ's reasons for discounting Plaintiff's testimony are not "clear and convincing."

**E.    Residual Functional Capacity Findings**

Plaintiff argues correctly that the ALJ's RFC findings are not supported by substantial evidence because no medical source opined she was capable of "light" work. (Ct. Rec. 14 at 13.) As discussed above, the ALJ erred in rejecting the treating physician opinions regarding her limitations. On remand, the ALJ will consider medical expert testimony and reevaluate the medical evidence of record to formulate a new RFC. The ALJ will take into consideration all severe and non-severe impairments in combination, make findings regarding Plaintiff's ability "to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and explain the evidence that supports his findings. *SSR 96-8*.

**F.    Remedy**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinion of treating physicians. The general

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester,* 81 at 834; *Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).  Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion.  *See also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).  The *McAllister* approach appears to be disfavored where the ALJ fails to provide any reasons for discrediting a medical opinion.  *See Pitzer*, *supra*; *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1987).

Case law requires an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [a medical opinion], (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (*citing Smolen*, 80 F.3d at 1292).

Here, it is not clear from record whether Plaintiff was disabled, as defined by the Social Security, prior to her date of last insured. The record has not been fully developed and the issues of onset and duration of impairments during the relevant time have not been resolved.  In addition, further evaluation of medical evidence, new RFC findings and vocational expert testimony will be necessary to determine if there are any jobs Plaintiff can perform.  Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED IN PART**.  This matter is remanded to the Commissioner for

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1 | additional proceedings pursuant to sentence four of 42. U.S.C. §
2 | 405(g) and the decision above;

3 |     2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is
4 | **DENIED;**

5 |     3.    An application for attorney fees may be filed by separate
6 | motion.

7 |     The District Court Executive is directed to file this Order and
8 | provide a copy to counsel for Plaintiff and Defendant. Judgment shall
9 | be entered for Plaintiff and the file shall be **CLOSED.**

10 |     DATED December 13, 2007.

11 |

12 |               S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18